**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                          PLAINTIFF

v.                                              No. 4:06CR00106-01 JLH

FRANZ JOSEPH GREY                                                                                 DEFENDANT

**OPINION AND ORDER**

On Monday, May 12, 2008, the Court conducted an evidentiary hearing on Franz Joseph Grey's Motion to Suppress Fruits of an Unlawful Search and Seizure. On Friday, May 9, 2008, Grey filed a motion for prior approval to hire an investigator and for additional time for investigation of the search and seizure prior to a hearing. For the reasons stated on the record at the hearing, that motion was denied. Document #72. The United States filed a motion in limine under seal. That motion was granted. Document #75. For the reasons stated hereinafter, Grey's motion to suppress is denied. Document #71.

**I.**

Grey and his co-defendant, Stanley Charles Johnson, were charged in a three-count indictment returned by the grand jury on March 9, 2006. Count 1 charged that Grey and Johnson knowingly possessed with the intent to use unlawfully more than five false identification documents, that is, Social Security cards, in violation of 18 U.S.C. § 1028(a)(3) and 2. Count 2 charged that Grey and Johnson knowingly possessed more than fifteen unauthorized access devices, that is, credit cards and bank account numbers obtained by the defendants, with the intent to defraud in violation of 18 U.S.C. § 1029(a)(3) and 2. Count 3 charged that Grey and Johnson knowingly possessed

counterfeit securities, that is, three counterfeit American Express traveler's checks, with the intent to deceive an organization in violation of 18 U.S.C. § 513(a) and 2.

Johnson entered into a plea agreement with the government whereby he pled guilty to Count 2 and the government in return dismissed Counts 1 and 3.

Grey entered into a conditional plea agreement pursuant to which he agreed that if his motion to suppress were denied, he would plead guilty to Count 2 and the government would dismiss Counts 1 and 3. During the May 12 hearing, the Court heard evidence on the motion to suppress and announced at the end of the hearing that the motion to suppress would be denied. This opinion is written to explain in more detail the reasons that the motion to suppress should be denied.

**II.**

Corporal David Wheeler of the Jefferson County Sheriff's Office stopped Grey and Johnson at approximately 3:06 p.m. on November 12, 2005, as they were traveling north bound on Interstate 530. Grey was the driver, and Johnson was the passenger, in a 2005 Ford F-150 pickup truck bearing a Tennessee license plate number. Wheeler had paced the vehicle at 80 miles per hour in a 70 miles per hour speed zone for approximately three miles before stopping the vehicle. Although Grey's motion to suppress states that he was not speeding, Grey, himself, admitted on the witness stand that he was speeding. Therefore, Wheeler had probable cause to stop Grey. *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998) ("[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator.").

Wheeler approached the driver's side of the Ford F-150 pickup truck and spoke with Grey, asking for Grey's driver's license, his proof of insurance, and current registration for the vehicle. Grey provided a California driver's license in the name of Robert Brown, Jr., but was unable to

provide appropriate registration papers for the vehicle. Wheeler ran a search on the driver's license and found no record that it was a valid driver's license. He requested Grey to exit the vehicle and he questioned him. Grey told Wheeler that he and Johnson had driven from Memphis, Tennessee, to Mississippi the day before and were returning. Although Grey described the trip as an overnight trip, he and Johnson had several large luggage bags in the rear of the pickup truck. Wheeler observed that Grey was sweating, pale, somewhat incoherent, "giddy," and nervous. Grey told Wheeler that the pickup truck was rented by Johnson's brother for Johnson. When Wheeler asked Grey for permission to search the truck, Grey told him that he would have to ask Johnson for permission to search.[1]

Wheeler then approached the passenger side of the vehicle and spoke to Johnson. Johnson provided a California driver's license properly identifying himself. Wheeler asked Johnson if he had anything illegal, and Johnson provided him with prescription pain tablets wrapped either in a napkin or black plastic but not in a prescription bottle. Johnson told Wheeler that some of the tablets were Codeine. Johnson admitted that he did not have a prescription for pain medicine. Johnson gave an account of where he and Grey had been that was similar to Grey's but different with respect to where they had spent the night.

Wheeler testified that he asked Johnson for verbal permission to search the Ford pickup truck and that Johnson gave his permission. Johnson testified that he could not remember whether he gave permission or not but he testified that Grey later told him that he had given permission for the search of the vehicle in what apparently was a conversation in which Johnson expressed dismay that Grey

---

[1] Grey testified that he refused consent and denied that he told Wheeler that he should ask Johnson, but the Court has concluded that Wheeler's testimony is more likely than Grey's to be accurate on this point.

was speeding and Grey expressed anger at Johnson for consenting to the search. Grey testified but did not dispute Johnson's testimony on this point. Grey's expression of anger at Johnson for consenting to the search is an admission that Johnson had given consent. The preponderance of the evidence supports the conclusion that Johnson gave permission for the search of the vehicle. The preponderance of the evidence also supports the conclusion that the vehicle was rented to Johnson, so Johnson had the authority to give permission to search the vehicle. *United States v. Hammons*, 152 F.3d 1025, 1027 (8th Cir. 1998). Johnson testified that he was not under the influence of drugs at the time. Johnson is a mature person with substantial experience in dealing with law enforcement officers. He was clearheaded enough that he had admonished Grey more than once to slow down, as both he and Grey testified. There is no evidence that Wheeler used any threats, intimidation, coercion, or promises to obtain Johnson's consent. Thus, the government has met its burden of proving that the consent to the search was freely given and was not coerced. *United States v. Esquivel*, 507 F.3d 1154, 1159-60 (8th Cir. 2007); *United States v. Poulak*, 236 F.3d 932, 936 (8th Cir. 2001).

The search was conducted by Wheeler and another deputy, Jennifer Carr. Wheeler began on the driver's side of the cab of the pickup truck, where he found an aluminum drinking can that had been cut with a knife so that only the bottom of the can and a small portion of its sides remained. The bottom of the can had burnt residue. From his training and experience, Wheeler concluded that the can had been used to melt illegal drugs that would be injected by a user into his body or to heat illegal drugs so the user could inhale the fumes. As the search continued, the deputies found several driver's licenses with Grey's picture but different names and addresses, several fraudulent Social

Security cards, several credit cards in fraudulent names, and other items that would be evidence that Grey and Johnson committed the crimes charged in the indictment.

In addition to his now-abandoned assertion that the traffic stop was invalid, Grey argues that the scope and duration of the subsequent search went beyond that authorized by the Constitution, that there was no probable cause for a search after the initial traffic stop, and that under the totality of the circumstances probable cause did not exist to continue the search or prolong the detention.

A detention may become a *de facto* arrest in violation of the Fourth Amendment if it continues for an unreasonably long time, but there is no rigid time limit as to the length of an investigatory detention. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985). "'[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005) (quoting *United States v. Bloomfeld*, 40 F.3d 910, 916 (8th Cir. 1994)). When an officer has probable cause to stop a vehicle, he may ask questions of the vehicle's occupants reasonably related to the stop, including questions relating to their destination, route, and purpose; questions of the driver about the identity of his passengers; and questions of the passengers to verify the information provided by the driver. *United States v. Edmisten*, 208 F.3d 693, 694 (8th Cir. 2000); *United States v. Munroe*, 143 F.3d 1113, 1116 (8th Cir. 1998).

If during a traffic stop an officer develops a reasonable, articulable suspicion that criminal activity is afoot, he has justification for a greater intrusion unrelated to the traffic offense. *Sanchez*, 417 F.3d at 975; *see also United States v. Barahona*, 990 F.2d 412, 416 (8th Cir. 1993) ("[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions."). Whether an officer has

a reasonable suspicion to expand the scope of a stop is determined by looking at "'the totality of the circumstances, in light of the officer's experience.'" *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997) (quoting *United States v. Dodson*, 109 F.3d 486, 488 (1997)). "Though each factor giving rise to suspicion might appear to be innocent when viewed alone, a combination of factors may warrant further investigation when viewed together." *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002).

Here, the totality of the circumstances justified Wheeler's decision to expand the intrusion beyond the traffic stop. The fact that Grey provided a driver's license for which there was no record, coupled with his odd behavior and the fact that he and one other person had several large luggage bags in a rented vehicle for what was purported to be an overnight trip, justified further inquiry. Johnson's admission that he was in possession of Codeine without a prescription gave additional justification for further inquiry. The totality of the circumstances justified further intrusion. The detention was not unreasonably long. According to the dispatcher's log, Wheeler stopped Grey and Johnson at 3:06 p.m., and twenty-three minutes later Deputy Carr left the scene of the traffic stop with Grey and Johnson in route to the CID office. Thus, the entire stop from beginning to end lasted twenty-three minutes, which is not unreasonable. *Cf. Sanchez*, 417 F.3d at 975 ("A total duration of approximately forty-five minutes is certainly not unreasonable . . . .").

At the evidentiary hearing, Grey's lawyer argued that the scope of the search was overly broad because Deputy Carr testified on cross-examination that she was searching for anything illegal. No authority has been cited, however, holding that an intent to search for anything illegal invalidates the search. Counsel cited *California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991), but that case does not support the argument for which it was cited.

Neither party presented evidence or argument as to whether Johnson's consent to search the pickup truck extended to the luggage bags, nor did the testimony specify which items of evidence were found in the cab as opposed to the bags. Wheeler testified that he found in the cab several California driver's licenses with Grey's picture but with names and other identifying features and several fraudulent Social Security cards. He testified that in the bed of the pickup truck the search "discovered a laser printer, a laptop computer, inside one of the suitcases, a brown colored suitcase which contained a checkbook, a briefcase, a checkbook, several bank accounts, and California driver's licenses in other people's names." Carr testified on cross-examination that some of the items of evidence were items that she found in the bags. There was no testimony as to which items she found in the bags or in which bags she found them. Grey testified that Carr found "them" buried inside his dirty clothes in a suitcase in the cab, but he did not specify which exhibits were "them," nor did he specify which suitcase was his. Carr denied that she searched any luggage bags found in the cab. According to her testimony, she helped search the cab, but the only luggage bags that she opened were in the bed of the truck.

Johnson's consent could reasonably be construed to extend to his bags but not necessarily to Grey's. *Hammons*, 152 F.3d at 1028. However, Grey had the burden of showing that he had a legitimate expectation of privacy in the bags that were searched. *United States v. Payne*, 119 F.3d 637, 641 (8th Cir. 1997); *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). Because Grey presented no evidence that he owned any specific bags from which evidence was taken, had historical use of any specific bags from which evidence was taken, controlled access to any specific bags from which evidence was taken, or had his identification on any specific bags from which evidence was taken, he did not meet his burden. *Payne*, 119 F.3d at 642. Furthermore, by the time

the bags were searched, Wheeler had found Johnson in possession of Codeine without a prescription, one or both in possession of an aluminum can used to cook illegal drugs, and Grey in possession of a false driver's license. A reasonably careful person would look at the facts and circumstances and conclude that contraband or evidence of a crime would be found if the vehicle and its contents were to be searched, so probable cause existed to search the bags whether or not there was consent. *United States v. Valle Cruz*, 452 F.3d 698, 703 (8th Cir. 2006).

In summary, Wheeler had probable cause to stop the pickup truck that Grey was driving. His initial inquiry gave rise to suspicions that justified further inquiry. After further inquiry he requested consent to search the vehicle. Although Grey was present, he did not expressly refuse consent. Instead, when Wheeler asked Grey for consent to search the truck, Grey referred him to Johnson and said that any consent would need to be given by Johnson because the vehicle was rented to Johnson. Wheeler then asked Johnson for consent to search, and Johnson consented. As to the luggage bags, Grey has failed to show that he had a legitimate expectation of privacy in any specific bag, and he has failed to specify any particular items of evidence taken from any bag owned or used by him. Moreover, probable cause existed for a search of the luggage bags, even if there was no consent.

## CONCLUSION

For all of these reasons, Grey's motion to suppress is denied.

IT IS SO ORDERED this 14th day of May, 2008.

*/s/ J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE